# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO,<br><br>        Plaintiff,<br><br>v.<br><br>SANTORO, *et al.*,<br><br>        Defendants. | Case No. 1:21-cv-01616-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM<br><br>ECF No. 22<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Stewart Manago ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on November 5, 2021. Before the Court could screen his complaint, Plaintiff filed a first amended complaint on January 10, 2022. The Court screened the first amended complaint and granted Plaintiff leave to amend. Plaintiff's second amended complaint is currently before the Court for screening. (ECF No. 22.)

**I.  Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed California Medical Facility in Vacaville, California.  Plaintiff was housed at the North Kern State Prison ("NKSP"), where the events in the complaint are alleged to have occurred.  Plaintiff names the following defendants: (1) K. Santoro, Warden, (2) K. Hixon, Chief Deputy Warden, (3) J. Jeter, Associate Warden, (4) J. Tangen, Facility Captain, (5) R. Philpott, Facility Lieutenant, (6) J. Franco, Correctional Sergeant, (7) E. Lunsford, Nurse Practitioner, (8) A. Canteras, Registered Nurse, (9) S. George, nurse practitioner, (10) A. Shittu, Chief Physician, (11) N. Odeluga, Chief Medical Executive, (12) C. Riley, supervisory, (13) T. Earl, Nurse, (14) C. Williams, Registered Nurse, (15) C. Schultz, medical doctor, (16) D. Goller, medical doctor, (17) S. Gerry, Registered Nurse, (18) A. Guinto, Registered Nurse, (19) J. Gabriel, Registered Nurse, (20) T. Gemmalyn, Registered Nurse,  (21) M. Walker, Registered Nurse, (22) C. McPherson, Health Care Grievance Office representative, (23) I. Lozano correctional officer of Investigative Services Unit, and (24) Does 1-17, custody and medical staff.

Plaintiff alleges as follows.  The Defendants were members of Plaintiff's "Medical Treatment Team" at NKSP.  Defendants were instructed to follow the consent decrees in *Plata* and in *Armstrong* and provide adequate medical treatment to inmates, including Plaintiff. From April 20, 2021 to March 4, 2022, each defendant was responsible for playing an active role in the delay or interference with Plaintiff's medical treatment. On April 21, 2021, Plaintiff filed a health care grievance alleging that on April 20, 2021, Plaintiff was the victim of excessive force prior to

2

being transferred from West Valley Detention Center to NKSP.  In his grievance, he complained that he had been a victim of excessive force by San Bernardino County Sheriff's Department for "retaliation and retribution" for demanding not to be transferred until after his then-scheduled surgery.  He was told by deputies that the surgery would be performed at NKSP. It is unclear from the allegations, but it appears that Plaintiff had been involved in a bus accident some time before April 20, 2021 and while in the custody of the San Bernardino Sheriff's Office, he was beaten which resulted in a foot, lower back, face and head injuries.

Plaintiff alleges that April 20, 2021 through March 4, 2022, Defendants Santoro, Hixon, Jeter, Tangen, Philpott, Franco, Lunsford, Canteras, George, Shittu, Odeluga, Riley, Earl, Williams, Schultz, Goller, Gerry, Guinto, Gabriel, Gemmalyn, Walker, McPherson and Does 1-17 knew or should have known of the deliberate indifference when medical personnel delay or interfere with medical treatment. On April 20, 2021, when Plaintiff arrived at NKSP, Plaintiff refused to get off the bus, in protest, without being assured by NKSP officials and Medical Personnel that Plaintiff would be taken to his surgery appointment.  Plaintiff had been cleared for surgery on April 14.  Defendants J. Franco and I. Lozano assured Plaintiff that they would timely summon medical assistance for Plaintiff injuries and have his fractured foot reset.  Plaintiff got off the bus.

Plaintiff alleges that Defendants Franco and Lozano conspired to conceal Plaintiff's injuries by failing to detail reports and take photographs of Plaintiff's injuries.  ISU members and Medical Personnel failed to properly document Plaintiff's injuries.[1]

On April 29, 2021, Plaintiff advised Defendants Santoro, Hixon, Jeter, Tangen, Philpott,

---

[1] The Court is unclear if Plaintiff is attempting to allege a failure to preserve evidence claim from injuries purportedly suffered at the hands of San Bernardino deputies. Under applicable Federal law, a failure to preserve evidence violates a defendant's right to due process only if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489 (1984); *Cooper v. Calderon*, 255 F.3d 1104, 1113 (9th Cir. 2001). A defendant must also demonstrate that the police acted in bad faith in failing to preserve potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Cooper*, 255 F.3d at 1113; *see also Guam v. Muna*, 999 F.2d 397, 400 (9th Cir. 1993). The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed. *Youngblood*, 488 U.S. at 56-57; *see also United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993). Plaintiff fails to state a cognizable claim because the failure to document is not related to any exculpatory evidence.

Shittu, Canteras, Odeluga, and Does 1-17 that Plaintiff has pain on his left middle toe and was scheduled to have surgery before transferring to NKSP. Plaintiff had prepared many letters, grievances and medical slips directed to Defendants regarding his foot pain and lower back pain, from April 2021 to March 2022.  These Defendants knew or should of known of Plaintiff's injuries because of what Defendant Lunsford documented in Plaintiff's medical records as follows: that Plaintiff had been involved in a bus accident in October 2020, resulting in left foot fracture which was not identified until January 2021; had a nerve condition study and was scheduled for a bone graft procedure and have the fracture reset, but was transferred instead; ongoing foot pain, lower back pain as shown on MRI of multifocal degenerative disc disease L4-5 with small disc bulging.

Plaintiff submitted a medical slip on April 29, 2021 requesting that Dr. Shittu to approve NKSP to take Plaintiff to his foot surgery.  Plaintiff's May 1, 2021 medical slip indicated that Plaintiff had a pain of 10 in foot and back pain.  Plaintiff submitted additional medical slips on May 3, and May 4.  On May 4, Plaintiff was issued a walker and a mobility impaired vest.  Plaintiff requested an expedited grievance which he submitted to Defendant McPherson.

In May 2021, Defendant Williams conducted an interview with Plaintiff concerning appeal, log no. NKSP HH 21000395, concerning Plaintiff lower extremities, legs, knees, ankles, surgery.  Plaintiff was told he does not have a referral for surgery from NKSP and has been referred to podiatry and his primary care physician will determine if surgery is warranted.

Plaintiff alleges that Defendants Shittu, Odeluga, Lunsford, George, Canteras, Williams, Riley, Earl, Gerry, Guinto, Gabriel, Walker, Gemmalyn, Schultz and Goller played an active role in the failure to ensure that Plaintiff received timely surgery to prevent pain and suffering from May 4, 2021 through November 2021.

On May 7, 2021, Plaintiff saw Defendant T. Gemmalyn who Plaintiff told Plaintiff was in serious pain and needed surgery on his left foot.  Defendants failed to ensure that Plaintiff received surgery from May 7 through November 22, 2021.  Plaintiff filed a grievance on May 9, 2022 that he was transferred without surgery for injuries in a bus accident on October 21, 2020.  An ARMC doctor agreed he needed surgery.

4

Plaintiff filed many medical slips, grievances, letters, and requests directed to Defendants Santoro, Hixon, Jeter, Tangen, Philpott, Franco, Lunsford, Canteras, George, Shittu, Odeluga, Riley, Earl ,Williams, Schultz, Goller, Gerry, Guinto, Gabriel, Walker, Gemmalyn and Does 1-17 seeking timely treatment for his left foot and lower back and each prevented Plaintiff's treatment in violation of *Plata* and *Armstrong*. From April 20, 2021 through March 4, 2022, Defendant Shittu, Odeluga, Lunsford, George refused to refer Plaintiff to pain a management consultant and rejected Plaintiff's complaints of back pain. All of these defendants did not accept the recommendations of Specialist Surgeon Moshe Sinale that Plaintiff needed surgery and did not follow Dr. Sinale's orders from his opinions from the X-rays. (SAC, ¶25.)

On June 25, 2021, Defendant Lunsford conspired with Defendants Schultz, Defendants Doller [sic], George to prepare false and misleading reports dated June 4, and June 21 concerning Plaintiff's x-rays that the findings of Plaintiff's X-rays of his left foot and that it was an old, well healed fracture.

On June 7, 2021, Plaintiff had a tele-med consultation with Dr. Sinale, podiatrist, who "advised Defendant Shittu, Odeluga, Lunsford, George, Goller, Schultz and Walker that 'the patient will require Austin bunionectomy of the left foot, osteotomy of the second metatarsal flexor tendon transfer and arthroplasty of the second toe.'" He indicated he would get authorization. Guinto, Walker, Gabriel and Gemmalyn failed to follow Dr. Sinale's orders by failing to timely produce full weightbearing x-rays of Plaintiff's left foot.

On November 23, 2021, Dr. Sinale finally conducted the surgery on Plaintiff left foot. From April 20, 2021 through November 23, 2021, Shittu, Odeluga, Lunsford, George, Canteras, Riley, Earl, Williams, Schultz, Dollar [sic], Gerry, Guinto, Walker, Gabriel, Gemmalyn and Does 1-17 were part of Plaintiff's Treatment Team where Dr. Sinale was the treating specialist who was recommending surgery.

On April 29, 2021 through March 4, 2022, Defendant Shittu, Odeluga, Lunsford, George and Does 1-17 were made aware by Plaintiff that Plaintiff had been in an accident on October 21, 2020 and that Plaintiff was experiencing lower back pain. These Defendants failed to conduct a left or right straight leg raise tests and failed to refer Plaintiff to physical therapy. Plaintiff

5

continued to report flare ups in his back pain.

From April 29, 2021 through March 4, 2022, Lunsford, George, Odeluga, Shittu, Canteras, Riley, Williams, Earl, Schultz, Goller and Does 1-17 conspired to fabricate some of Plaintiff's medical records and each concealed evidence to delay Plaintiff's treatment. Lunsford, George, Odeluga, Shittu and Does 1-17 conspired to conceal Plaintiff's spinal injury. Defendants removed the MRI report dated January 13, 2021 out of Plaintiff's medical records, which delayed Plaintiff's timely treatment. Defendants Shittu, Odeluga, Lunsford, George, and Does 1-17 denied all of Plaintiff's request for physical examination by an orthopedic spine consultation for a surgical and/or neurosurgical consultation. They are not qualified to make an orthopedic diagnosis and failed to refer Plaintiff to an expert for his back pain. Plaintiff condition deteriorated with worsening pain and spasms in his legs. They failed to address the atrophy in Plaintiff's right hand and leg and Plaintiff now has deformities in his left foot, left leg, right arm and right leg.

Plaintiff "asserts claims under State and Federal law for violations of his First Amendment rights and right to be free from retaliation for whistleblowing, and under the Eighth Amendment."

Plaintiff seeks compensatory and punitive damages.

**III.     Discussion**

**A.  Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.; see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not short, and it is not a plain statement of his claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was

involved. Plaintiff's allegations read as a running list of names as to various issues he has had since being transferred to NKSP, and it is unclear who engaged in what conduct. In many instances, Plaintiff provides a laundry list of names without saying who did what and makes vague, conclusory allegations instead of specifying with <u>factual details</u> what each Defendant did individually and specifically to deprive Plaintiff of his Eighth Amendment rights. In addition, the factual allegations do not say the role of each defendant played and how they would know of his "medical slips." For example, the second amended complaint does not allege any facts demonstrating how <u>each</u> Defendant interacted with Plaintiff, what role (if any) each Defendant had in Plaintiff's treatment, how each Defendant was aware that withholding Plaintiff's treatment created an excessive risk to Plaintiff's health, and the steps each Defendant took to intentionally disregard the risk. Plaintiff was informed in the prior screening order that he must describe the interactions of each Defendant with Plaintiff. Defendants are entitled to know the conduct they are alleged to have engaged in which violated Plaintiff's rights. Fed. R. Civ. P. 8. Plaintiff has been unable to cure this deficiency.

**B. Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978); *Rizzo v. Goode*, 423 U.S. 362, (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978).

While Plaintiff attempts to allege that each and every Defendant knew certain information

or acted intentionally with respect to the allegations in the second amended complaint, these conclusory allegations are insufficient to link any named Defendant to any actions or omissions that may have violated Plaintiff's rights. Plaintiff must name individual defendants and allege what each defendant did or did not do that resulted in a violation of his constitutional rights. Plaintiff may not lump defendants all together, and as explained above, a laundry list of names is not sufficient.  Plaintiff has failed to allege what each individual defendant did or did not do that caused the asserted deprivation. Plaintiff has been unable to cure this deficiency.

### C. Supervisor Liability

Insofar as Plaintiff is attempting to sue any defendant based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must... demonstrate that his deprivation resulted from an official policy or custom established by a... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.

1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

The allegations remains unclear what conduct Plaintiff alleges that any Defendant engaged in that violated his constitutional rights. Plaintiff has failed to allege direct participation in the alleged violations. Plaintiff has failed to allege the causal link between any defendant and the claimed constitutional violation which must be specifically alleged. Plaintiff does not make a sufficient showing of any personal participation, direction, or knowledge on any defendant's part regarding any other prison officials' actions. Plaintiff's vague and conclusory statements that officials were aware of his unconstitutional treatment are insufficient to give rise to a constitutional violation. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**D. Conspiracy**

Plaintiff attempts to allege a claim for conspiracy in violation of 42 U.S.C. § 1983.

A conspiracy claim brought under Section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted)).

Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are conclusory and merely speculative. Plaintiff does not provide any specific facts showing that any of the Defendants had an agreement to violate his constitutional rights. Plaintiff has been unable to cure this deficiency.

### E. Deliberate Indifference to Medical Care

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate

indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d at 242, overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012)) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

As to the objective prong, Plaintiff has joined numerous medical conditions; head, back, foot, delay of surgery and others.  Liberally construing the allegations in the second amended complaint, Plaintiff states that he had serious medical needs.

As to the subjective prong, Plaintiff fails to satisfy this second prong, i.e., that Defendants possessed a sufficiently culpable state of mind. A prison official cannot be held liable under the Eighth Amendment for denying an inmate medical care unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. In other words, "[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citing *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotations omitted); *Farmer*, 511 U.S. at 839 (reasoning that deliberate indifference analysis must focus on "what a defendant's mental attitude actually was"). Plaintiff seems to allege Defendants knew or should have known of the various conditions from the various medical slips, letters and grievances he submitted. However, grouping all Defendants or listing them in a laundry list of names, does not state what each individual knew. A "prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (emphasis added). Moreover, the allegations are conclusory without factual basis and because there are so many

11

complaints, the Court cannot discern the relevant facts for each defendant. *See also Krainskin v. Nev. Ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (dismissing complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew or should have known' " of the violation).

The allegations are insufficient to allege subjective knowledge by each of the individuals named in the complaint. While a pro se pleading is liberally construed, Defendants are entitled to know what conduct they engaged in which violated Plaintiff's constitutional rights. See *Krainskin v. Nev. Ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ*., 616 F.3d 963, 969 (9th Cir. 2010) (dismissing complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew or should have known' " of the violation); *Sullivan v. Biter*, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983."); see also *Castaneda v. Barton,* No. 1:20-CV-01088 BAM (PC), 2021 WL 4033068, at *3 (E.D. Cal. Sept. 3, 2021), report and recommendation adopted, No. 1:20-CV-01088 NONE BAM(PC), 2021 WL 4593966 (E.D. Cal. Oct. 6, 2021) (conclusory allegations are insufficient to allege subjective knowledge by each of the individuals named in the complaint).

While Plaintiff alleges that Plaintiff "advised" Defendants Santoro, Hixon, Jeter, Tangen, Philpott, Shittu, Canteras, Odeluga, and Does 1-17 that he had pain in his left foot on April 29, 2021, Plaintiff fails to allege what each Defendant did not or did not do in response to his pain. He fails to allege what was deliberately indifferent in each person's conduct.

Plaintiff also alleges on May 7, 2021, that he saw Defendant T. Gemmalyn who Plaintiff told Plaintiff was in serious pain and needed surgery on his left foot. But Plaintiff fails to allege what this Defendant did or did not do in response to his pain. Plaintiff, again, says the only proper response was the surgery, but the Constitution does not guarantee surgery if each Defendant's response to his pain was not deliberately indifferent. Rather, Plaintiff merely alleges that he was not given the surgery. Similarly, Plaintiff alleges that he told Dr. Shittu about his foot in April-May 2021, and it appears that Dr. Shittu issued Plaintiff a walker and a mobility vest.

Plaintiff objects that he did not get the surgery he wanted. Based on the allegations, Dr. Shittu's response was not deliberately indifferent.

Plaintiff also complains that Defendants Shittu, Odeluga, Lunsford, George and Does 1-17 did not conduct straight leg raise tests and refer Plaintiff to physical therapy when Plaintiff complained of back pain. At most, this allegation may involve medical malpractice. Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-106).

Here, Plaintiff expresses a strong disagreement with Defendants over the proper course of treatment for his chronic back pain, his surgery, his MRI results and many other issues and they should have followed Dr. Sinale's recommendations. "However, a mere 'difference of medical opinion...[is] insufficient, as a matter of law, to establish deliberate indifference.' " *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (finding the plaintiffs' argument that one medication was superior to another and therefore should not have been discontinued was a mere difference of medical opinion). In order "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.' " *Id.* (quoting *Jackson*, 90 F.3d at 332). Plaintiff has been unable to cure this deficiency.

**F.  Violation of Consent Decrees**

Plaintiff alleges Defendants have violated the consent decrees in *Plata/Armstrong* cases. To the extent Plaintiff contends that Defendants have failed to comply with any remedial order in these cases, his claim fails.

It is well-settled that the remedial order issued in *Plata* does not provide an independent cause of action under § 1983 as the order does not create or expand on a plaintiff's constitutional rights. *Coleman v. CDCR*, No. 09-cv-02192-SKO PC, 2011 WL 2619569, at *4 (E.D. Cal. July 1, 2011) (citing *Cagle v. Sutherland*, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights)); see also *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional

violations but do not create or enlarge constitutional rights and cannot serve as a substantive basis for damages). "[A]ny violations of the remedial plan developed in *Armstrong* do not provide an independent basis for relief in this court. Violations of the Armstrong Remedial Plan must be addressed through the procedures provided by that plan." *Montecastro v. Newsom*, No. 1:20-CV-00689 SAB(PC), 2020 WL 6484097, at *5 (E.D. Cal. Nov. 4, 2020), report and recommendation adopted, No. 1:20-CV-00689 NONE SAB(PC), 2020 WL 7319423 (E.D. Cal. Dec. 11, 2020). If Plaintiff has concerns about the actions under the *Plata/Armstrong/Coleman* consent decrees, he should express those concerns to the class representative or court in those cases.

### G. False Reports

A false report, including in medical files, is not a constitutional violation. Plaintiff alleges that Defendants falsified the medical report and statements. *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Plaintiff's complaint therefore fails to state a claim based on allegations of a false medical injury report. *Sanford v. Eaton*, No. 1:20-CV-00792 BAM(PC), 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021)(denying a claim alleging falsified medical report and statements made by Plaintiff), denying to adopt on other grounds, *Sanford v. Eaton*, No. 1:20-CV00792-JLT BAM(PC), 2022 WL 168530, at *2 (E.D. Cal. Jan. 19, 2022). Plaintiff does not have a separate claim for false report of a medical condition.

### H. Retaliation

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th

Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's allegations are insufficient to demonstrate any "adverse action" by any defendant that chilled Plaintiff's First Amendment rights and that did not reasonably advance a legitimate correctional goal. Plaintiff's conclusory allegations are insufficient. Plaintiff has failed to link defendants to his claim for retaliation. Plaintiff has been unable to cure this deficiency.

### III. Conclusion and Recommendation

For the reasons discussed, the Court finds that Plaintiff fails to state a cognizable claim for relief. Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**July 25, 2022**__                    /s/ *Barbara A. McAuliffe*
                                                   UNITED STATES MAGISTRATE JUDGE